**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.**

RYAN DELL, individually and on behalf of all
others similarly situated,

Plaintiff,

v.

PARKING REVENUE RECOVERY SERVICES, INC.,
and ASURA TECHNOLOGIES USA, INC.,

Defendants.
_______________________________________________/

## CLASS ACTION COMPLAINT

Plaintiff Ryan Dell ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendants Parking Revenue Recovery Services, Inc. ("PRRS") and Asura Technologies USA, Inc. ("Asura") (collectively, "Defendants") for violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725 ("DPPA"), and alleges as follows upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including investigation by counsel.

## PRELIMINARY STATEMENT

1. This is a putative class action seeking statutory damages, declaratory relief, and permanent injunctive relief against Defendants for knowingly obtaining, disclosing, and/or using personal information from motor vehicle records for purposes not permitted under the DPPA.

2. PRRS is a self-described "parking compliance" and collection company that contracts with private parking operators to enforce alleged private parking charges by mailing standardized parking notices and follow-up collection letters to vehicle owners.

3. Asura is a technology vendor that provides automated license plate recognition, video analytics, and "Automatic Real-time Compliance" tools that Defendants use to capture license plates, process images, and host online payment portals for alleged parking violations.

4. As part of their joint parking enforcement scheme, Defendants deploy cameras and video analytics to capture the license plates of vehicles entering and exiting private parking lots and garages throughout the United States, including the San Antonio lot that Plaintiff used and other facilities where PRRS enforces alleged violations.

5. When Defendants contend a parking charge is due or unpaid, they use the captured license plate to obtain, or cause to be obtained, the name and home address of the registered owner from motor vehicle records, and then generate and mail private parking notices and related collection communications to the owner's home.

6. Defendants' system targets not only vehicle owners who allegedly failed to pay for parking, but also owners who Defendants contend overstayed a paid period and owners who in fact paid for parking and were present only during the time covered by their payment but were nevertheless flagged in Defendants' systems.

7. In each of these scenarios, Defendants use personal information obtained from motor vehicle records solely to generate and send these after-the-fact parking notices and collection letters.

8. Despite sending tens of thousands of such notices and letters on a monthly basis, Defendants do not, as a matter of standard practice, file civil lawsuits or initiate arbitration proceedings to collect the private parking charges reflected in parking notices, and they did not do so with respect to Plaintiff's alleged charge.

9. After a reasonable investigation, Plaintiff is unaware of any civil or arbitral

proceeding that Defendants have filed to enforce the parking notice issued to him. Defendants' obtainment and use of DMV-sourced personal information in this program is therefore not "in connection with" any concrete civil, criminal, administrative, or arbitral proceeding, including any investigation in anticipation of litigation, service of process, or enforcement of judgments or orders.

10. In violation of the DPPA, Defendants knowingly and without consent obtained or caused to be obtained Plaintiff's and the Class Members' personal information, including their names and home addresses, from "motor vehicle records" within the meaning of 18 U.S.C. § 2725(1) by using license plates captured at private parking facilities to access motor vehicle registration records, and then disclosed and used that information to mail, or to have mailed, private parking notices, purported "violations," and collection letters to Plaintiff's and the Class Members' homes for purposes not permitted by 18 U.S.C. § 2721(b).

11. Plaintiff's and the Class Members' claims under the DPPA arise from Defendants' independent decision to obtain, disclose, and/or use personal information from motor vehicle records. These claims do not seek to enforce any alleged parking contract, do not depend on the validity or enforceability of any purported "parking contract" or other terms and conditions, and would exist even if no parking contract existed at all.

12. Defendants' DPPA violations caused Plaintiff and the Class Members concrete harm, including statutory invasion of privacy, unwanted intrusion into the home through mailed demands and threats, loss of control over sensitive DMV-sourced personal information, time and effort spent reviewing and responding to the mailings, researching Defendants and their operations, preserving records, and emotional distress.

13. These injuries are concrete and particularized. They arise from the violation of

Plaintiff's and the Class Members' substantive privacy rights in their motor vehicle records and closely resemble harms long recognized at common law, including invasion of privacy, intrusion into the home, and misuse of private information. The injuries are fairly traceable to Defendants' conduct in obtaining, disclosing, and using DMV-sourced personal information, and they are redressable through the monetary, declaratory, and injunctive relief requested in this Complaint.

14. Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of at least $2,500 per violation, reasonable attorneys' fees and costs, and such other relief as the Court determines appropriate, including a permanent injunction under 18 U.S.C. § 2724(b)(4) prohibiting Defendants from obtaining, disclosing, or using personal information from any motor vehicle record for non-permitted purposes and requiring Defendants to identify and delete such information in their possession, custody, or control and to request deletion by any downstream recipients.

## PARTIES

15. Plaintiff Dell is an individual residing in Sarasota, Florida. Plaintiff owns a vehicle registered in Florida, bearing a Florida license plate.

16. Defendant PRRS is a corporation organized under the laws of Colorado with its principal place of business in Aurora, Colorado.

17. PRRS is registered to do business in Florida, maintains a registered agent in Florida, and enforces alleged private parking charges by mailing PRRS parking notices and follow-up collection letters to vehicle owners in Florida, including Plaintiff.

18. Defendant Asura is a corporation organized under the laws of Colorado with its principal place of business in Centennial, Colorado.

19. Asura markets and provides automated license plate recognition and parking

compliance technology that PRRS uses nationwide, including in connection with parking facilities whose alleged violations are enforced by PRRS through mailed parking notices and collection letters that reach Florida residents, such as Plaintiff.

## JURISDICTION AND VENUE

20. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the DPPA.

21. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because, on information and belief, the proposed Class consists of at least 100 members, at least one member of the proposed Class is a citizen of a state different from at least one Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

22. This Court has personal jurisdiction over PRRS because PRRS is registered to do business in Florida, maintains a registered agent in Florida, conducts substantial and not isolated business in Florida, and purposefully directs its parking enforcement and collection activities into this District, including by obtaining DMV-sourced personal information for Florida-registered vehicles and mailing parking notices and follow-up collection letters to Florida residents, such as the letters sent to Plaintiff's home in Sarasota County, Florida.

23. This Court has personal jurisdiction over Asura because Asura purposefully directs its conduct into this District by providing automated license plate recognition, video analytics, and parking compliance technology that PRRS uses in enforcing alleged private parking violations nationwide, including in matters where PRRS obtains DMV-sourced personal information for Florida-registered vehicles and sends parking notices and related collection letters into this District. Asura knowingly participates in an integrated enforcement program with PRRS that

results in DMV-sourced personal information being obtained and used to send parking and collection mailings to Florida residents, including Plaintiff.

24. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the obtainment, disclosure, and use of Plaintiff's personal information from a motor vehicle record and Plaintiff's receipt of PRRS's parking notice and follow-up collection letters at his home in Sarasota County, Florida.

25. All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## THE DPPA

26. In 1994, Congress enacted the DPPA to protect the privacy of licensed drivers and to restrict misuse of personal information contained in motor vehicle records.

27. The DPPA establishes a narrow list of enumerated permissible uses and imposes civil liability on any person who knowingly obtains, discloses, or uses personal information from motor vehicle records for a purpose not permitted under the DPPA. *See generally* 18 U.S.C. §§ 2721-2725.

28. Specifically, the DPPA provides: "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724(a).

29. "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability

information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

30. "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

31. The DPPA provides a narrow set of permissible uses of personal information, enumerated in 18 U.S.C. § 2721(b), and also restricts resale and redisclosure of personal information. 18 U.S.C. § 2721(c).

32. The DPPA authorizes actual damages, liquidated damages of at least $2,500 per violation, punitive damages for willful or reckless disregard of the law, reasonable attorneys' fees and other litigation costs, and equitable relief, including declaratory and injunctive relief. 18 U.S.C. § 2724(b).

## FACTS

**Defendants' Parking Enforcement and DMV Data Practices**

33. PRRS markets itself as a "parking compliance company" that enforces parking payments for private operators across the country. PRRS promotes its services for commercial lots and garages, municipal facilities, college and university facilities, airports, hospitals, commercial properties, and residential buildings, including the private surface parking lot at 300 Avenue E in San Antonio, Texas where Plaintiff parked (the "San Antonio Lot").

34. Asura is an AI-driven technology provider that offers license plate recognition engines, video analytics, and a parking compliance package branded in part as "Automatic Real-time Compliance." Asura publicly touts its partnership with PRRS, describing how Asura's

technology provides continuous surveillance, captures license plates, matches them with high accuracy, and feeds PRRS's enforcement workflow.

35. In facilities where PRRS and Asura provide enforcement, Defendants use cameras and video analytics to capture the license plates of vehicles entering and exiting private parking lots and garages. Asura's technology processes images and reads license plates, which PRRS then uses in its violation and collection systems.

36. When Defendants' systems flag a vehicle as allegedly owing money—whether because Defendants believe no payment was made, because they believe the vehicle "overstayed" a paid period, or because of internal errors—PRRS uses the captured license plate to obtain, or cause to be obtained, the registered owner's name and mailing address from motor vehicle records maintained by state departments of motor vehicles or their agents.

37. PRRS then uses that DMV-sourced personal information to mail, or cause to be mailed, standardized PRRS parking notices ("Parking Notices") to registered owners' home addresses, irrespective of who was actually driving or occupying the vehicle at the time of the alleged parking event.

38. The Parking Notices state that the vehicle was "parked on private property" and "in breach of the posted rules and use limitations" of the property, demand payment of an inflated "Balance Due," and threaten that, after a short period, the account will be placed in default and referred to collections, and that the owner may be subject to towing, booting, and additional costs and fees.

39. Parking Notices commonly include timestamped photographs of a vehicle entering and exiting a parking facility and list a notice number, "date issued," alleged violation, location,

and balance due. The Notices do not attach or recite the full text of any "rules and use limitations" or any alleged "parking contract."

40. If a vehicle owner does not promptly pay after receiving a Parking Notice, PRRS or its designated attorneys send follow-up collection letters to the same home address obtained from the motor vehicle record. These letters refer to the original PRRS notice, threaten further collection activity, and may reference potential repossession of a vehicle or additional fees.

41. On information and belief, vehicle owners or operators who pay for parking at facilities enforced by PRRS, including through kiosks, mobile applications, and websites, are not required to provide, and typically do not provide, the home mailing address associated with their vehicle registration for enforcement or collection purposes.

42. Instead, PRRS and Asura obtain the names and home mailing addresses used for Parking Notices and follow-up collection letters by querying state motor vehicle registration records, or those records' authorized contractors, using the captured license plate numbers.

43. In particular, where a vehicle with an out-of-state license plate is parked at a facility enforced by PRRS and the registered owner later receives a PRRS Parking Notice at his or her out-of-state home, the logical and reasonably inferable source of the name-and-address pair used for that mailing is the motor vehicle registration record associated with that license plate. Plaintiff's own experience, including receipt of a Parking Notice at the exact Florida home address reflected on his Florida vehicle registration despite not providing that address during payment, illustrates how Defendants' enforcement program relies on motor vehicle records to obtain personal information for mailed Parking Notices.

44. Defendants' business model depends on obtaining and using official motor vehicle records to obtain personal information and then sending standardized Parking Notices and follow-up collection letters that pressure vehicle owners into paying alleged private parking debts.

45. Whether a vehicle owner in fact failed to pay for parking, paid but was incorrectly flagged as owing money, or never parked for more than a brief period, Defendants' use of DMV-sourced personal information to send PRRS Parking Notices and follow-up collection letters is the same and does not qualify as a permissible purpose under the DPPA.

46. Defendants' obtainment, disclosure, and use of DMV-sourced personal information is not based on drivers' express consent, which the DPPA defines as consent in writing or through electronic signature. 18 U.S.C. § 2725(5).

47. Drivers at facilities enforced by PRRS are not informed that PRRS or Asura will obtain personal information from motor vehicle records or that DMV-sourced information will be used to send mailed parking and collection letters to their homes. Nor do drivers provide consent in writing or by electronic signature for Defendants to obtain, disclose, or use their personal information from any motor vehicle record.

48. On information and belief, PRRS's enforcement program is designed to rely on standardized Parking Notices and follow-up collection letters, rather than on litigation or arbitration, to pressure vehicle owners into paying alleged private parking debts. In the ordinary course, PRRS does not file lawsuits in court or initiate arbitration proceedings to collect on the private parking charges reflected in its Parking Notices, and it did not do so with respect to Plaintiff.

49. Instead, Defendants use DMV-sourced personal information solely to send standardized Parking Notices, follow-up notices, and collection letters to vehicle owners' homes,

and to threaten additional fees and collection activity, in an effort to coerce payment without resort to any court or arbitral forum.

50. Accordingly, Defendants' obtainment, disclosure, and use of DMV-sourced personal information is not undertaken to file, prosecute, defend, or resolve any specific civil, criminal, administrative, or arbitral proceeding, including any investigation in anticipation of litigation, service of process, or enforcement of judgments or orders.

51. Rather, Defendants obtain and use such information automatically whenever they flag a vehicle as allegedly owing a private parking charge, regardless of whether any lawsuit, arbitration, or other proceeding exists, is contemplated, or is ever pursued. Their use of DMV-sourced personal information is instead directed solely to private, after-the-fact parking enforcement and collection activity, which is not a permissible purpose under the DPPA.

52. Plaintiff's and Class Members' claims in this case arise from this standardized misuse of DMV-sourced personal information. The claims do not seek to enforce any underlying parking contract, and the validity or invalidity of any alleged parking charge is irrelevant to Defendants' DPPA liability.

**Common harm and ongoing risk**

53. Defendants' conduct and DPPA violations caused common forms of harm to Plaintiff and the Class Members, including invasion of privacy, unwanted intrusion into the home through mailed Parking Notices and collection letters, loss of control over sensitive personal information obtained from motor vehicle records, time and effort spent reviewing and responding to the communications, researching Defendants and their operations, preserving records, and emotional distress caused by Defendants' threats of additional fees and collection activity.

54. On information and belief, Defendants retain the license plate data and DMV-sourced personal information they obtain for vehicles they flag as allegedly owing money and continue to store that information in centralized systems for further use or disclosure, including transmission to third party collection vendors, data analytics providers, or other downstream recipients. The continued retention and active use of these systems creates an ongoing risk that Class Members' DMV-sourced personal information will be used, disclosed, or reused in the same or similar ways in the future.

55. On information and belief, Defendants continue to retain Plaintiff's DMV-sourced personal information in those same systems, alongside data for other vehicle owners, and have not notified him that his information has been deleted or sequestered from further use. Defendants' ongoing possession and use of Plaintiff's DMV-sourced data, combined with their continuing operation of the same enforcement program, creates a real and immediate risk that Plaintiff's information will again be used or disclosed in connection with future collection activity, resale, or other unauthorized purposes.

56. Monetary relief alone will not prevent Defendants from continuing to obtain, disclose, and use personal information from motor vehicle records in the same manner going forward or require Defendants to identify and purge DMV-sourced personal information already stored in their systems and in the hands of downstream recipients. Declaratory and injunctive relief are necessary to halt Defendants' ongoing course of conduct and to protect Plaintiff and the Class from the continued and future misuse, retention, and disclosure of their DMV-sourced personal information.

**Plaintiff-Specific Facts**

57. Plaintiff is a Florida resident who owns a vehicle registered in Florida with a Florida license plate. Plaintiff resides in Sarasota County, Florida.

58. On or about August 5, 2024, Plaintiff traveled to San Antonio, Texas and parked his Florida-registered vehicle in a private surface parking lot located at 300 Avenue E, San Antonio, Texas 78205 (the "San Antonio Lot").

59. When Plaintiff parked at the San Antonio Lot, there was no attendant on site and the on-site payment kiosk was not functioning. The kiosk directed users to pay for parking electronically using a remote payment system designated by the operator of the lot.

60. Plaintiff followed those instructions and paid for parking using that electronic payment method. Plaintiff and his party remained in the San Antonio Lot only for the period for which he paid. Plaintiff did not overstay the time covered by his payment and did not attempt to avoid paying for parking.

61. Plaintiff used the designated electronic payment system solely to pay for that specific parking session as directed by the non-functioning kiosk. He did not intend to enter, and did not understand himself to be entering, any broader contract governing future disputes, data sharing, use of DMV records, or dispute-resolution procedures.

62. Plaintiff was not required, in order to complete payment, to check any box or click any button expressly labeled to indicate that he had read and agreed to any "terms of use," "user agreement," arbitration provision, or similar contract terms. Plaintiff does not recall being presented with any clear or conspicuous on-screen disclosure stating that, by paying for parking, he was agreeing to arbitrate disputes or to allow any entity to obtain his personal information from state motor vehicle records.

63. Plaintiff did not see any posted "parking contract," terms of use, or arbitration provision at the San Antonio Lot. No sign or kiosk disclosed that PRRS, Asura, or any other enforcement vendor would obtain his personal information from state motor vehicle records or that any dispute over the misuse of DMV-sourced personal information would be governed by any website or electronic-payment terms.

64. Plaintiff did not provide his Florida home mailing address, or any mailing address associated with his vehicle registration, to PRRS or Asura in connection with the parking transaction. Plaintiff used the electronic payment system only to pay for his parking time and did not provide any information that would allow PRRS or Asura to identify his Sarasota home address from payment information alone.

65. After Plaintiff returned to Florida, PRRS mailed or caused to be mailed a written "Notice of Non-Compliance" (the "Dell Notice") addressed to Plaintiff at his home in Sarasota County, Florida. The Dell Notice identified the issuer/creditor as Parking Revenue Recovery Services, Inc., alleged the violation "No payment received," and demanded payment of an $82 "Balance Due."

66. The Dell Notice was the first time Plaintiff became aware that PRRS and Asura had obtained his name and Florida home address. Plaintiff did not provide that home mailing address to PRRS or Asura in connection with the parking transaction, and nothing about the electronic payment process required Defendants to access or use any Florida motor vehicle record to process his payment.

67. On information and belief, the mailing address used in the Dell Notice was identical to the home address listed for Plaintiff's vehicle in Florida motor vehicle registration records, including the street address, city, state, and ZIP code.

68. Based on the exact match between the address on the Dell Notice and the address in his Florida vehicle registration, and the absence of any other means by which PRRS or Asura could have obtained his home address from the payment transaction, Plaintiff is informed and believes that PRRS obtained, or caused to be obtained, his name and Florida home address from a motor vehicle record associated with his Florida license plate in order to mail the Dell Notice to his Sarasota home.

69. Plaintiff disputed the Dell Notice through the dispute channels identified on the notice, explained that he paid for parking for the entire time he was present at the San Antonio Lot, and provided proof of payment. Plaintiff did not overstay or attempt to avoid paying for parking.

70. Despite Plaintiff's dispute and explanation, PRRS continued to send follow-up collection communications to Plaintiff's Florida home, reiterating the alleged balance due and threatening additional fees and further collection activity if payment was not made.

71. PRRS used the personal information obtained from Plaintiff's motor vehicle records, including his name and Florida home address, in those follow-up communications to pressure him to pay an alleged private parking debt and to threaten serious consequences if he did not.

72. Plaintiff did not authorize PRRS, Asura, or any of their agents to obtain, disclose, or use his personal information from any motor vehicle record. Plaintiff did not sign or provide any written or other express consent for any release of his DMV records.

73. Plaintiff never agreed to arbitrate disputes with PRRS, Asura, or their agents. Plaintiff did not sign any arbitration agreement, did not check any box or click any on-screen indication of assent to arbitration terms, and was never presented with any writing or clear on-

screen disclosure stating that disputes over Defendants' obtainment, disclosure, or use of his DMV-sourced personal information would be resolved by arbitration.

74. Defendants have not filed any civil lawsuit or demand for arbitration to collect the alleged parking charge from Plaintiff. Instead, they relied on DMV-sourced personal information solely to send the Dell Notice and follow-up collection letters containing boilerplate threats of additional fees and adverse consequences, in an effort to coerce payment without resort to any court or arbitral forum.

75. Ultimately, after Plaintiff persisted in disputing the purported violation and after further correspondence, Defendants waived and removed the ticket and ceased demanding payment.

76. Defendants' eventual decision to waive the ticket did not undo or cure their prior DPPA violations. By that point, Defendants had already obtained Plaintiff's personal information from a motor vehicle record, disclosed and used that information to send multiple parking and collection letters to his Florida home, and stored his personal information in their systems for potential further use and disclosure, where it remains unless and until Defendants are required to identify and delete it.

77. As a result of Defendants' conduct, Plaintiff suffered harm, including invasion of privacy, unwanted intrusion into his home through mailed demands and threats, loss of control over sensitive personal information obtained from DMV records, the time and effort required to investigate the mailings, research Defendants and their operations, preserve proof of payment, and respond to Defendants' threats, emotional distress, and ongoing anxiety about the continued retention and potential future misuse or disclosure of his DMV-sourced personal information.

78. Plaintiff's claims in this action arise solely out of Defendants' misuse of motor vehicle records under the DPPA. Plaintiff does not seek to enforce any alleged parking contract, does not seek any relief based on the terms of any parking contract, website, or electronic-payment agreement, and does not assert any claim sounding in contract.

## CLASS ALLEGATIONS

### Proposed Class

79. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

80. The Class that Plaintiff seeks to represent is defined as:

> **All persons in the United States whose personal information contained in a motor vehicle record was obtained, disclosed, and/or used by Defendants for purposes not permitted under the DPPA during the four-year period prior to the filing of this lawsuit through the date of class certification**.

81. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers, directors, affiliates, legal representatives, and employees, any Judge presiding over this matter and the members of the Judge's immediate family and judicial staff, and any person who timely and properly requests exclusion from the Class.

### Numerosity

82. The Class consists of at least one hundred, and likely tens of thousands, of members, given Defendants' standardized practice of obtaining, disclosing, and using personal information from motor vehicle records and mailing Parking Notices and follow-up collection letters at scale across multiple private parking facilities in Texas, Florida, and other states. Joinder of all Class Members is impracticable.

83. Class Members can be identified through objective evidence, including PRRS's enforcement logs, license plate recognition data, motor vehicle record access logs, Asura's parking compliance and payment logs, mailing address files, and data from PRRS's violation payment and appeals systems, as well as customer service and dispute databases.

**Commonality/Predominance**

84. The central liability question in this case is whether Defendants' standardized practice of obtaining, disclosing, and/or using personal information from motor vehicle records to pursue private parking charges—by mailing Parking Notices and follow-up collection letters and by transmitting personal information to vendors for that purpose—violates the DPPA.

85. There are numerous questions of law and fact common to the Class, and those questions predominate over any questions affecting only individual members. Common questions include, but are not limited to:

a. Whether Defendants knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from motor vehicle records in connection with Parking Notices and follow-up collection letters mailed to their homes;

b. Whether any permissible use under 18 U.S.C. § 2721(b) applies to Defendants' conduct;

c. Whether Plaintiff and the Class Members provided express consent, as defined in 18 U.S.C. § 2725(5), for Defendants to obtain, disclose, or use their personal information from motor vehicle records;

d. Whether Defendants' conduct violates the DPPA; and

e. Whether Defendants have acted or refused to act on grounds that apply generally to the Class such that declaratory and injunctive relief is appropriate respecting the Class as a whole.

86. These common questions are capable of common answers that will drive the resolution of this litigation. Plaintiff's and the Class Members' claims arise from the same standardized enforcement practices and will be proven with common evidence from Defendants' and their vendors' systems and records.

**Typicality**

87. Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all Class Members, had his protected personal information from motor vehicle records obtained, used, and/or disclosed by Defendants for the same non-permitted purpose of sending Parking Notices and related collection letters to his home.

88. Plaintiff's claims are based on the same legal theory as the claims of the Class: Defendants knowingly obtained, disclosed, and/or used personal information from motor vehicle records for non-permitted purposes in violation of the DPPA. Any differences in the underlying parking events do not alter the common DPPA questions or the evidence that will establish Defendants' liability.

**Adequacy of Representation**

89. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with those of the Class, and Plaintiff's interest in obtaining relief for the DPPA violations described herein is aligned with the interests of the Class.

90. Plaintiff has retained competent counsel and both Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class.

**Superiority**

91. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3) because:

a. Joinder of all Class Members would be impractical and inefficient, as they reside throughout the United States;

b. The individual statutory damages available to many Class Members are small compared to the burden and expense of individual litigation, making it difficult for them to seek redress on their own;

c. Class treatment will conserve judicial and party resources and promote consistency of adjudication on the core DPPA liability questions;

d. The requested declaratory and injunctive relief is indivisible and will provide uniform relief by prohibiting Defendants from obtaining, disclosing, and using personal information from motor vehicle records for non-permitted purposes and by requiring deletion of such information already stored; and

e. This action is manageable as a class action because the central liability issues turn on Defendants' standardized practices and common records, rather than on any individualized dealings or contracts.

**COUNT I**
**Violation of Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725**
**On Behalf of Plaintiff and the Class**

92. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. Plaintiff and the Class Members are "individual[s] to whom the information pertains" within the meaning of 18 U.S.C. § 2724(a) and "persons" under 18 U.S.C. § 2725(2).

94. Plaintiff's and the Class Members' names and home addresses are "personal information" under the DPPA within the meaning of 18 U.S.C. § 2725(3).

95. The records from which Defendants obtained Plaintiff's and the Class Members' personal information, including vehicle registration records associated with license plates, are "motor vehicle records" within the meaning of 18 U.S.C. § 2725(1).

96. Defendants knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from motor vehicle records, either directly or through agents, resellers, or other intermediaries with access to such records, including state departments of motor vehicles and their contractors.

97. Defendants used DMV-sourced personal information to send Parking Notices and follow-up collection letters to Plaintiff's and the Class Members' homes and, on information and belief, to populate online payment portals used to pursue alleged after-the-fact private parking invoices and collect money.

98. As alleged above, Defendants' obtainment, disclosure, and use of Plaintiff's and the Class Members' personal information from motor vehicle records was not for any permissible purpose under 18 U.S.C. § 2721(b). Defendants' conduct was not for use by any government agency; not related to motor vehicle safety, theft, or recall; not in connection with insurance underwriting, claims, or anti-fraud efforts; not for employment, commercial driver's license verification, or similar purposes; and not for any other permissible use under the statute. In particular, Defendants did not use motor vehicle records merely to verify the accuracy of personal information submitted by Plaintiff or Class Members; instead, they used motor vehicle records as their original source of name and home address in order to pursue alleged private parking charges,

and did so outside the context of any existing or reasonably anticipated civil, criminal, administrative, or arbitral proceeding.

99. Plaintiff and the Class Members did not provide express consent for Defendants to obtain, disclose, or use their personal information from motor vehicle records and did not sign any written consent authorizing release of personal information to PRRS, Asura, or their agents.

100. Defendants' misuse of DMV-sourced personal information caused Plaintiff and the Class Members concrete harm, including invasion of privacy, unwanted mailed Parking Notices and collection letters, loss of control over sensitive personal information, time and effort required to investigate and respond to the communications and preserve records, and emotional distress.

101. Defendants acted willfully and in reckless disregard of the DPPA. Defendants built and operated a standardized enforcement program that depends on using DMV-sourced personal information for private parking enforcement and collection across multiple jurisdictions, despite the absence of any permissible purpose under 18 U.S.C. § 2721(b) and without obtaining express consent from the individuals whose records they accessed.

102. Defendants continued their practices even after receiving disputes and complaints from vehicle owners, including disputes from individuals who provided proof of payment and from Plaintiff, who explained that he had paid for the entire period he was parked and did not overstay, and that Defendants had no justification to obtain or use his DMV records. Defendants' later decision to waive certain individual parking charges did not undo or cure their prior DPPA violations.

103. As a direct and proximate result of Defendants' violations of the DPPA, Plaintiff and the Class Members are entitled to actual damages, but in no event less than liquidated damages of $2,500 per violation, punitive damages for Defendants' willful or reckless disregard of the

statute, reasonable attorneys' fees and other litigation costs, and such other relief as the Court deems appropriate, including declaratory and injunctive relief.

104. Monetary relief alone cannot prevent Defendants from continuing to obtain, disclose, and use DMV-sourced personal information in the same manner or require Defendants to identify and purge Plaintiff's and the Class Members' personal information already in Defendants' systems and in the hands of third parties.

105. Plaintiff and the Class Members therefore seek a declaratory judgment that Defendants' conduct violates the DPPA and permanent injunctive relief under 18 U.S.C. § 2724(b)(4), including orders prohibiting Defendants from obtaining, disclosing, or using personal information from motor vehicle records for non-permitted purposes and requiring the identification and deletion of such information, together with appropriate notice to and deletion by downstream recipients.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants, and grant the following relief:

a. Certify this action as a class action under Federal Rule of Civil Procedure 23; appoint Plaintiff as Class Representative; and appoint Plaintiff's counsel as Class Counsel;

b. Declare that Defendants' conduct described herein violates the DPPA;

c. Award statutory damages of at least $2,500 for each violation of the DPPA for Plaintiff and each member of the Class, or actual damages if greater, under 18 U.S.C. § 2724(b)(1);

d. Award punitive damages for Defendants' willful or reckless disregard of the DPPA under 18 U.S.C. § 2724(b)(2);

e. Enter permanent injunctive relief under 18 U.S.C. § 2724(b)(4) enjoining Defendants, and all those acting in concert with them, from obtaining, disclosing, or using personal

information from motor vehicle records to pursue private parking charges or for any other non-permitted purpose, and requiring Defendants to:

(i) Identify and delete all personal information obtained from motor vehicle records relating to Plaintiff and the Class that was used for non-permitted purposes;

(ii) Notify all third-party vendors, collection agencies, and other entities to whom Defendants disclosed such DMV-sourced personal information that they must delete that information; and

(iii) Certify to the Court within a reasonable time that such deletion and notifications have been completed;

f. Award reasonable attorneys' fees, costs, and expenses under 18 U.S.C. § 2724(b)(3);

g. Award pre-judgment and post-judgment interest as permitted by law; and

h. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

Dated: December 5, 2025

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130

By: *s/Charles M. Garabedian*
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
victor@mfh.law
charles@mfh.law
eservice@mfh.law

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on December 5, 2025, which served same electronically upon all counsel of record.

By: *s/ Charles M. Garabedian*