**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RYAN DELL and JIRANDY LAHITTE,
individually and on behalf of all others
similarly situated,

Plaintiff,

v. **CASE NO. 8:25-cv-03329-WFJ-CPT**

PARKING REVENUE RECOVERY SERVICES, INC.,
and ASURA TECHNOLOGIES USA, INC.

Defendants.
_______________________________________/

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendants Parking Revenue Recovery Services, Inc. and Asura Technologies USA, Inc., by and through their undersigned counsel, hereby move to compel arbitration of the claims raised in Plaintiffs' Amended Complaint (Dkt. 5). In support, Defendants state as follows:

## INTRODUCTION

Defendants Parking Revenue Recovery Services, Inc. ("PRRS") and Asura Technologies USA, Inc. ("Asura," and, together with PRRS, "Defendants"), by and through their undersigned counsel, respectfully move to compel Plaintiffs Ryan Dell ("Dell") and Jirandy Lahitte ("Lahitte," and, together with Dell, "Plaintiffs") to arbitrate the claim raised in their Amended Complaint filed on January 6, 2026 (Dkt. 5, the "Complaint" or "Compl."). Plaintiffs cannot proceed with their claims before this Court. Instead, they must proceed in individual arbitrations pursuant to the arbitration agreements contained in the valid and enforceable contracts governing the conduct alleged in the Complaint. Indeed, Plaintiffs' cause of action and arbitration agreements are nearly identical to the claims and agreements asserted against PRRS in *Butler et al v. Asura et al*, Case No. 24-cv-529 (D. Colo.) and *Tobey v. Ace Parking Management, Inc. et al*, Case No. 3:24-cv-2932 (N.D. Tex.), where the district courts properly compelled arbitration and stayed proceedings. *See Butler*, Dkt. 33; *Tobey,* No. 3:24-CV-2932-X, 2025 WL 1919887 (N.D. Tex. July 11, 2025.) The same result is required here.

Defendants provide compliance services for various parking locations in the United States, including at locations in San Antonio, Texas and Miami, Florida where the named Plaintiffs parked their vehicles. The crux of Plaintiffs' Complaint is that Defendants issued notices to the Plaintiffs, purportedly in violation of the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA"), based on Defendants' alleged "obtainment, disclosure, and use of DMV-sourced personal information" to issue the notices to Plaintiffs. (Compl. ¶ 48). Defendants dispute these allegations and affirmatively assert that issuance of the notices was not a violation of the DPPA. However, this dispute must be resolved in arbitration, not in this Court.

Plaintiffs' use of the pertinent parking facilities is governed by the contracts contained in the numerous, conspicuous on-site signage, which compels arbitration and includes a class-action waiver:

> By parking on this Facility, you hereby agree that the sole remedy for all [an] unresolved dispute[s] is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration.

(Declaration of Michael J. Drow, hereafter "Drow Decl." Exs. 1 and 2.)

As the district courts in both *Butler* and *Tobey* properly concluded, under the Federal Arbitration Act (the "FAA"), under identical circumstances, these types of written agreements to arbitrate are valid and enforceable. As such,

Plaintiffs should be compelled to bring their claims, if at all, in binding arbitration and this action should be stayed pending arbitration.

**FACTUAL BACKGROUND**

Defendants manage parking lots for compliance with use restrictions throughout the United States. (Compl. ¶¶ 18, 20.)[1] In San Antonio, Texas, Defendants conduct parking compliance and enforcement at a property located at 300 Avenue E (the "San Antonio Lot") (*Id.* ¶ 34.) In Miami, Florida, Defendants conduct parking compliance and enforcement at a property located at 5975 Sunset Drive (the "Miami Garage") (*Id.*)

Plaintiff Dell alleges that on or about August 5, 2024, he parked his car in the San Antonio Lot, and that, approximately two weeks later, Defendants sent a Notice of Non-Compliance to Plaintiff Dell, alleging "'[n]o payment received,' and demand[ing] payment of an $82 'Balance Due.'" (*Id.* ¶¶ 60, 67.)

Plaintiff Lahitte alleges that, on December 12, 2025, he parked his car at the Miami Garage, did not pay for parking, and received a "Notice of Non-Compliance" mailed to his home. (*Id.* ¶¶ 82-83, 85.)

Both the San Antonio Lot and Miami Garage used by the respective Plaintiffs contained (and contain) a sign which has an agreement to arbitrate disputes regarding use of the parking facilities. In fact, the particular parking

[1] Non-conclusory allegations in Plaintiffs' Complaint are assumed to be true solely for the purposes of this Motion, and Defendants reserve the right to contest all allegations set forth in the Complaint at later stages of this litigation.

facilities that Plaintiffs parked in both contained multiple signs, which display the terms of Plaintiffs' use of the parking facilities (the "Contract"). At the time Plaintiff Dell parked in the lot, the San Antonio Lot Contract provided:

> **NO FREE PARKING ANY TIME**
> You must pay for parking within 10 minutes of entering this Facility.
>
> **PARKING ENFORCEMENT**
> This Facility's rules and use limitations are strictly enforced by Parking Revenue Recovery Services, Inc. This Facility may be monitored by License Plate Recognition technology to ensure compliance with the rules. Vehicles failing to comply with Facility rules will be charged additional parking fees up to $250.00 and may be subject to towing or booting, to the extent permitted by law. Unpaid parking fees will be assigned for collection to a debt collector.
>
> **ARBITRATION**
> By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration.

At the time that Plaintiff Lahitte parked in the Miami Garage, the Contract similarly stated:

> **FACILITY USE CONTRACT**
> This Facility is not operated by a Governmental Entity
>
> **YOU MUST COMPLY WITH ALL SIGNS AT ALL TIMES**
> Read these terms PRIOR to parking. By entering and parking on this Facility, you accept all these terms and the Terms and Conditions accessed on the QR code below left. If you do not agree to the Signs, Privacy Policy and the Terms and Conditions, you may not use this private parking Facility and should exit this Facility immediately.

**NO FREE PARKING AT ANY TIME**

This Facility has a 15 Minute Grace Period from the time you entered to comply with the posted rules.

**PARKING COMPLIANCE**

This Facility's rules and use limitations are strictly enforced by Parking Revenue Recovery Services, Inc. This Facility may be monitored by video analytics and/or license plate recognition technology to ensure compliance with the Facility's rules for use. Vehicles failing to comply with Facility use rules will be assessed a Non-Compliance fee of $120.00 per Non-Compliant use to recover costs to manage compliance and to identify violators and may be subject to towing or booting, to the extent permitted by law. Unpaid fees assessed by PRRS will be assigned for collection to a 3rd Party debt collector.

**ARBITRATION**

By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration.

**DATA PRIVACY**

By entering this Facility, you agree to PRRS's Privacy Policy accessed via the QR code below right and acknowledge that PRRS is collecting and processing your personal information. You also grant permission and consent to PRRS to collect and process information about the vehicle you are driving to confirm your registration as a user of the Facility.

**DISPUTE PROCESS**

To dispute a Notice of Non-Compliance that you've received either in the mail or on your windshield go to ***Disputes@prrsparking.com*** within 15 days of receiving the Notice and submit your dispute. Include all necessary information to support your dispute. PRRS will provide a decision within 5 business days of receipt of your dispute. If

> you are not satisfied with PRRS's decision, within 10 days you may appeal PRRS's decision to a 3rd party adjudicator.
>
> **PRRS's Privacy Policy and Terms and Conditions are available at:**
>
> [hyperlinks and QR codes omitted]

(Drow Decl. ¶¶ 2-5, Exs. 1-2.) The Contract is conspicuously posted on white text with a red background at various locations in the parking facilities, including at the entrance and exit for the parking facilities. (*See id.*) The Contract was posted prior to Plaintiffs' parking in the parking facilities. (*Id.*) Plaintiffs' alleged grievances in this action arise from Defendants' purported use of their personal information obtained by Defendants as a result of Plaintiffs' respective use of the San Antonio Lot and Miami Garage. (*See* Compl. ¶¶ 60, 67, 82, 85.)

## LEGAL STANDARD

Congress enacted the FAA "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA reflects both a "liberal policy favoring arbitration," and the "fundamental principal that arbitration is a matter of contract." *Id.* The FAA applies to any "contract evidencing a transaction involving commerce," and the phrase "involving commerce" is interpreted broadly to apply to any contract "affecting commerce." *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 276-77 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,

388 U.S. 395, 401 (1967). Accordingly, it covers the Contract and Plaintiffs' use of the parking facilities here, as it relates to "motor vehicles which are the quintessential instrumentalities of modern interstate commerce." *Garcia v. Vanguard Car Rental USA, Inc.*, 510 F. Supp. 2d 821, 835 (M.D. Fla. 2007), *aff'd*, 540 F.3d 1242 (11th Cir. 2008); *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 531 (N.D. Tex. 2024) (noting "the instrumentalities of commerce are the planes, trains, and automobiles of commerce, along with those persons associated with them.") (citation omitted).

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Courts must apply the FAA in resolving whether to enforce arbitration agreements in contracts, as here, involving interstate commerce. *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1322 (M.D. Fla. 2017); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). With the FAA, Congress sought to guarantee the enforcement of arbitration agreements and to prevent the parties thereto from avoiding their contractual obligations to arbitrate. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219-220 (1985). To that end, the FAA provides that any arbitration agreement within its scope "**shall be valid, irrevocable, and enforceable[.]**" 9 U.S.C. § 2 (emphasis added); *AT&T Mobility*, 563 U.S. at 344

("The overarching purpose of the FAA, evident in the text of the §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *see also Sammons v. Sonic-N. Cadillac, Inc.*, No. 607CV277ORL19DAB, 2007 WL 2298032, at *3 (M.D. Fla. Aug. 7, 2007) ("There is a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (citation omitted).

"Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts should apply ordinary state-law principles that govern the formation of contracts." *Osborne v. Wells Fargo Advisors, LLC*, No. 2:11-CV-691-FTM-DNF, 2012 WL 2952533, at *2 (M.D. Fla. July 19, 2012) (citations omitted.); *Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*, No. 5:09-CV-152-DF, 2011 WL 13244637, at *7 (E.D. Tex. Mar. 14, 2011) (citation omitted.) Based on the FAA, "courts have established a policy of favoring arbitration and enforcing arbitration agreements." *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F. Supp. 2d 1327, 1331 (S.D. Fla. 2003); *Wynne v. Am. Exp. Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *9 (E.D. Tex. Sept. 30, 2010). As such, courts "resolve ambiguities as to the scope of the arbitration provision in favor of arbitration." *Lattimore v. Floor & Decor of Am.*, No. 8:24-CV-0255-MSS-AEP, 2024 WL 5673726, at *2 (M.D. Fla. Mar. 4, 2024); *see also Stinnett Enters. v. Dragon Textile Mills,* 192 F.3d 127 (5th Cir. 1999)

("ambiguities as to the scope of an arbitration clause itself must be resolved in favor of arbitration") (citation omitted); *Pro. Consulting Servs. S.A.S. v. Inmigracion Pro, LLC*, No. 23-CV-22055, 2024 WL 4103919, at *5 (S.D. Fla. Sept. 6, 2024) (same). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Bedeschi Am., Inc. v. Mach. Repair Int'l, LLC*, No. 2:21-CV-00141, 2022 WL 267878, at *1 (S.D. Tex. Jan. 28, 2022) (citation omitted); *Robinson v. NBC Universal Cable*, No. 17-CV-81324, 2018 WL 8620154, at *2 (S.D. Fla. Apr. 23, 2018) (same).

Absent a waiver, which is clearly not the case here,[2] there are two factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; and (2) whether an arbitrable issue exists. *Fla. Farm Bureau Ins. Companies v. Pulte Home Corp.*, No. 8:04-CV-2357-T-EAJ, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005) (applying the FAA); *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (finding the first two elements govern without consideration of waiver.) Both components are present here, and the case should proceed to arbitration.

---

[2] A party does not waive the right to arbitrate when, "after Plaintiff initiated this lawsuit, [defendant] promptly file[s] its Motion to Compel Arbitration." *Rathburn v. Wild Kingdom, LLC*, No. 22-23711-CIV, 2023 WL 12187357, at *4-5 (S.D. Fla. Mar. 1, 2023); *McReynolds v. Elston*, 222 S.W.3d 731, 742 (Tex. App. 2007) (same).

With respect to the request for a stay of discovery pending resolution of whether the claims must be arbitrated, the relevant standard is discussed in Part I.E. below.

**ARGUMENT**

In accordance with the FAA and Florida and Texas law,[3] the arbitration clause in the Contract is valid and enforceable and encompasses Plaintiffs' single cause of action asserted in this case. As such, Plaintiffs should be compelled to bring their claims, if at all, in binding arbitration.

As mentioned, this case presents the same underlying facts and legal questions considered in *Butler*, Case No. 24-cv-529, and *Tobey*, No. 3:24-CV-2932-X, 2025 WL 191887, where the courts entered orders compelling arbitration of similar claims. *See Butler*, Dkt. 33; *Tobey*, 2025 WL 1919887. In so ordering, the *Butler* court observed:

> At first blush, it may seem counterintuitive or surprising that one can be bound by the terms of a contract by parking in a parking lot. But a bit of consideration reveals that such contracts are, in fact, not unusual at all. The fundamental exchange of promises at the heart of any implied parking contract is fairly obvious: you allow me to park my car on your

[3] Under choice-of-law principles, courts typically apply the law of the state with the "most significant relationship" to the contract. *See Maxus Expl. Co. v. Moran Bros*., 817 S.W.2d 50, 53 (Tex. 1991); *Advanced Cable Ties, Inc v. Am. Elite Molding, LLC*, No. 3:18-CV-2035-MCR/MJF, 2019 WL 13280170, at *6 (N.D. Fla. Jan. 25, 2019). Here, the Contracts were entered into by Plaintiffs in Texas and Florida with a Colorado company. However, the Court need not choose which body of law to apply unless there is some outcome determinative conflict between the potentially applicable bodies of law. *In re Jan. 2021 Short Squeeze Trading Litig*., 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022), *aff'd*, 76 F.4th 1335 (11th Cir. 2023); *BNSF Ry. Co. v. Jones Lang Lasalle Americas, Inc*., No. 4:20-CV-01372-O, 2022 WL 562898, at *3 (N.D. Tex. Feb. 24, 2022.) Here, Defendants have not identified any outcome determinative conflicts between Texas and Florida law.

> property, and I agree to pay you for this privilege, or else risk towing and ticketing. This exchange, on its own, is sufficient to meet the basic criteria necessary to establish the formation of a contract.

(Dkt. 33, p. 2.) The court held that the contract, which is fundamentally the same as the contracts at issue here, contained a valid and enforceable arbitration agreement. (*Id.* at 5-8.) Therefore, the court entered an order compelling arbitration. The same result is required here.

**A. Plaintiffs Agreed to Arbitrate the Dispute.**

Under Florida and Texas law, "[a] valid contract arises when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1221 (M.D. Fla. 2013); *StubHub, Inc. v. Ball*, 676 S.W.3d. 193, 199 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (noting that the principle that a party may manifest their assent by conduct "generally applies to arbitration agreements"). A party's consent to a contract can be manifested by the acts or performance of the party even if that party does not sign the contract. *Turner v. U-Haul Co. of Fla. 905, LLC*, No. 608-CV-118-ORL-28DAB, 2008 WL 709107, at *4 (M.D. Fla. Mar. 14, 2008). Pertinently, neither the FAA nor the Florida or Texas law "require an arbitration agreement to contain a signature and, a contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner." *Wright v. Greensky, Inc.*, No. 20-CV-62441, 2021 WL 2414170, at *9 (S.D. Fla. June 14,

2021) (citations omitted); *In re AdvancePCS Health L.P.*, 172 S.W.3d 604, 606 (Tex. 2005) (applying Texas law and the FAA). Indeed, it is black letter law that Plaintiffs formed an enforceable agreement through their conduct:

> A consumer parks a car in a private parking lot. A prominent sign at the entrance to the lot states that a $10-per-hour charge will be collected upon exit from the lot and that the business is not responsible for damage to the vehicle while parked in the lot. By entering the lot, the consumer manifests assent to the transaction concerning the use of the parking lot, and the terms posted on the sign are adopted under subsection (a).

Restatement of the Law, Consumer Contracts § 2 (2024).

As such, parties may enter into an enforceable agreement to arbitrate by course of conduct, notwithstanding the absence of specific negotiations between the parties, and absent the parties' signatures. *See Owings*, 978 F. Supp. 2d at 1221; *Hudson Glob. Res. Mgmt., Inc. v. Beck*, No. 805CV1446T27TBM, 2006 WL 1722353, at *5 (M.D. Fla. June 20, 2006); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002.) "If the moving party shows the existence of an agreement, the burden shifts to the party opposing arbitration to show that no valid contract existed. To meet that burden, a non-moving party must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Mattson v. WTS Int'l, Inc.*, No. 8:20-CV-1245-CEH-AEP, 2021 WL 1060211, at *7 (M.D. Fla. Mar. 20, 2021) (citations omitted); *Horton v. Everything Breaks Inc.*, No. 3:22-CV-02131-S-BT, 2023 WL 5167021, at *2 (N.D. Tex. June 5, 2023).

Here, the parking lots Plaintiffs parked in contained conspicuous signs, posted on a contrasting red background, that notified Plaintiffs under a capitalized, boldface "**ARBITRATION**" heading that: "By parking on this Facility, you hereby agree that the sole remedy for all unresolved dispute[s] is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration." (Drow Decl. Exs. 1 and 2.) Plaintiffs accepted that offer, an offer which explicitly included the arbitration clause, by parking at the facilities in question. (*See* Compl. ¶¶ 60, 82.) Therefore, Defendants have demonstrated that Plaintiffs manifested assent to the arbitration provision through their decisions to remain parked in the facilities. *Simon v. Nat'l Passenger Corp.*, No. 8:24-CV-2586-TPB-CPT, 2025 WL 326664, at *3 (M.D. Fla. Jan. 29, 2025) (plaintiff manifested assent to arbitration provision by purchasing a train ticket); *In re Halliburton Co.*, 80 S.W.3d at 569 (plaintiff's continued employment with employer after receipt of contract containing an arbitration agreement sufficiently demonstrated his assent to the terms of the arbitration agreement); *Butler*, Case No. 24-cv-529 (plaintiff consented to arbitration agreement by parking on lot with conspicuous signage that parking constituted consent to arbitrate disputes); *Tobey*, No. 3:24-CV-2932-X, 2025 WL 191887 (same).

The totality of the circumstances in this case indicate that Plaintiffs had reasonable notice of the Contract and the arbitration clause therein.

Defendants have submitted sworn testimony and photographs demonstrating that the Contract was posted at numerous locations (including the entrance) of the parking facilities used by Plaintiffs. (Drow Decl. ¶ 2-5, Exs. 1 and 2.) In addition, the evidence demonstrates that the Contract was posted in the relevant parking facilities *prior* to Plaintiffs' use of the parking lots. (*See id.* ¶¶ 4-5; *See* Compl. ¶¶ 7-9.[4])

The conspicuous signs in the parking facilities that Plaintiffs elected to use put Plaintiffs on notice of the terms and conditions of his use of the parking lot, including the agreement to arbitrate. Plaintiffs only needed to read the signs to be informed of their agreement to arbitrate, and whether or not they chose to do so has no bearing on the fact that the arbitration agreement is enforceable. *See Carey v. Kirk*, No. 1:21-CV-20408-JEM, 2021 WL 3115879, at *5 (S.D. Fla. July 6, 2021), *report and recommendation adopted,* No. 21-20408-CIV, 2021 WL 3111590 (S.D. Fla. July 22, 2021) ("The fact that [plaintiffs] did not take the time to read the two arbitration provisions and inquire about them does not render the agreement to arbitrate unenforceable."); *see also Greenberg v. Drs. Assocs., Inc.*, 338 F. Supp. 3d 1280, 1282 (S.D. Fla. 2018) ("Under

[4] Any argument by Plaintiffs in response that they do not recall seeing the signs or agreeing to arbitrate is insufficient to defeat arbitration, as "[i]n Florida, it is well-settled that the offeror may specify the terms and manner of acceptance." *Mattson*, 2021 WL 1060211, at *7; *see also Chatmon v. W. Texas Counseling & Rehab*., No. 3:14-CV-945-P, 2015 WL 13544782, at *2 (N.D. Tex. Dec. 1, 2015) (same) (applying Texas law.) The signs in question clearly state that, "[b]y parking on this Facility, [Plaintiff] hereby agree[s] that the sole remedy for any unresolved dispute is binding arbitration[.]" (Drow Decl. Exs. 1 and 2.)

Florida law, a plaintiff is bound by all of the terms of a contract, including an arbitration clause, regardless of whether he actually read them or understood them at the time he assented."); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (A plaintiff's "failure to read the agreement does not excuse him from arbitration.").

*Wright v. Greensky* is instructive. No. 20-CV-62441, 2021 WL 2414170 (S.D. Fla. June 14, 2021). In *Wright*, defendants mailed plaintiff a loan agreement containing an arbitration agreement with an opt-out clause. *Id.* at *13. Despite plaintiff's claims that she did not recall receiving the agreement, nor reviewing the arbitration clause, the court held that plaintiff's "subsequent conduct of drawing on the loan and making payments under the terms of that loan [] assented to the terms of the Arbitration Provision." *Id.* at *18. Here, Plaintiffs were plainly on notice that their decisions to park in the facilities resulted in their agreement "that the sole remedy for all unresolved disputes is binding arbitration[.]" (Drow Decl. Exs. 1 and 2.) It is undisputed that Plaintiffs chose to park in the facilities (Compl. ¶¶ 60, 82), demonstrating their acquiescence to the Contract and its arbitration clause.[5]

[5] Defendants assert that there is no dispute regarding the arbitrability of Plaintiffs' claim; however, if the court deems that some factual issues need to be resolved, the correct approach is to hold a factual hearing on those issues pursuant to the FAA. *Massa v. Michael Ridard Hosp. LLC*, 306 So. 3d 1106, 1109 (Fla. 3d DCA 2020); *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex. App. 2003); *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. 1 at, 22.

### B. An Arbitrable Issue Exists As Plaintiffs' Claim Falls Within The Scope Of The Arbitration Agreements.

The second factor, whether an arbitrable issue exists, is clearly met here. Plaintiffs' claim in this action relates to their use of a parking facility and Defendants' purported use of their personal information to generate and send parking notices to Plaintiffs based on their use of that facility. (Compl. ¶¶ 10-11.) "[T]he language of the contract that defines the scope of disputes subject to arbitration." *Wolfe v. Carnival Corp.*, 421 F. Supp. 3d 1355, 1358 (S.D. Fla. 2019) (citation omitted.) "[I]f allegations underlying claims touch matters covered by the parties' arbitration agreement, then claims must be arbitrated, whatever legal labels are attached to them." *Northbrook Indem. Co. v. First Auto. Serv. Corp., N.M.*, No. 3:07-CV-683-J-32JRK, 2008 WL 3009899, at *5 (M.D. Fla. Aug. 1, 2008) (citation omitted); *City of Laredo v. Mojica*, 399 S.W.3d 190, 195 (Tex. App. 2012) (same). Here, the Contract contains a broad dispute resolution scope, expressly stating: "By parking on this Facility, you hereby agree that the sole remedy *for all unresolved dispute[s]* is binding arbitration[.]" (Drow Decl. Exs. 1 and 2 (emphasis added).)

Plaintiffs' DPPA claim based on their use of the parking facilities and Defendants' purported use of their personal information to issue parking notices to Plaintiffs is an "unresolved dispute" between the parties and thus falls squarely within the Contract's scope. (Drow Decl. Exs. 1 and 2.)

Even if there is doubt regarding the arbitrability of Plaintiffs' claims (which there is not), any doubt must be resolved in favor of Defendants. *Robinson*, No. 17-CV-81324, 2018 WL 8620154, at *2 (noting that courts address arbitration inquiries "with a healthy regard for the federal policy favoring arbitration.") (citation omitted); *McCauley v. Food Serv. Holdings, Ltd.*, No. 9:11CV172, 2012 WL 760901, at *4 (E.D. Tex. Jan. 31, 2012) (same); *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224 (M.D. Fla. 2013) (noting "[t]he Supreme Court has found Congress intended for the FAA to be interpreted liberally, favoring arbitration agreements such that any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Furthermore, where, as here, the arbitration provision is extremely broad and written in the most general terms to encompass all disputes, controversies, or claims, the agreement to arbitrate should be construed as broadly as intended. *FusionStorm, Inc. v. Presidio Networked Sols., Inc.*, 871 F. Supp. 2d 1345, 1354 (M.D. Fla. 2012); *Branch L. Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 20 (Tex. App. 2016) (same). Because Plaintiffs' claims are arbitrable, the second element is also satisfied.

### C. The Arbitration Agreement Requires Plaintiffs to Arbitrate Their Claims Against Both Defendants.

Plaintiffs cannot avoid arbitration with Defendant Asura. Intertwined estoppel permits a non-party (also referred to as a "non-signatory") to an

arbitration agreement to compel arbitration of a party-plaintiff's claims where the claims against a non-party are intertwined with the plaintiff's claims against a closely-related party to the agreement, and the claims are "intimately founded in and intertwined with the underlying contract obligations." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 510 (5th Cir. 2016); *In re Merrill Lynch*, 235 S.W.3d at 193-94 (Tex. 2007) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)); *McAdoo v. New Line Transp., LLC*, No. 8:16-CV-1917-T-27AEP, 2017 WL 942114, at *5 (M.D. Fla. Mar. 9, 2017) (holding the same under Florida law). Allowing non-signatories to compel arbitration with a signatory "precludes a signatory from avoiding arbitration with a party when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement the estopped party has signed." *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.).

That is clearly the case here as the claims against PRRS and Asura are identical and based on the same alleged conduct. Plaintiffs allege that Defendants' practice of imposing fines and/or threatening to tow or boot a vehicle for parking beyond a designated period violates the DPPA. (Compl., ¶¶ 5-10.) To that end, the Complaint alleges, without distinction, that "Defendants' DPPA violations caused Plaintiffs and Class Members concrete harm[.]" (*Id.* ¶ 12.) Plaintiffs consistently identify "Defendants" without

distinction throughout the Complaint. (*See id.* ¶¶ 5-10, 12-14, 36-37, 45-49, 51-58, 68, 75-80, 82, 86-89, 91-92, 95-96, 98-102, 105, 109-19.)

Even if Plaintiffs had not alleged claims against the two Defendants based on the same alleged conduct, an arbitration clause "cannot be avoided by recasting the claims as torts against an owner, officer, agent, or affiliate, and 'it is impractical to require every corporate agent to sign or be listed in every contract.'" *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (quoting *In re Vista Ins. Group, Inc.*, 192 S.W.3d 759, 762–63 (Tex. 2006)). Both Texas and Florida courts have previously compelled arbitration pursuant to intertwined claims estoppel. *See e.g., Cotton Com. USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 102 (Tex. App. 2012); *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App. 2014); *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 946 (Fla. 1st DCA 2004); *Ocwen Financial Corp. v. Holman*, 769 So.2d 481, 483 (Fla. 4th DCA 2000). The linchpin for estoppel is equity—fairness. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

The Texas Supreme Court has applied estoppel to prevent a party plaintiff from making a claim arising out of the same "tap root" as another and applying arbitration to only one claim. *See Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, at 307–08 (Tex. 2006.) In *Meyer*, a motor vehicle manufacturer transferred its right of first refusal to an assignee, thereby preempting the

dealer's agreement with another buyer. *Id.* at 304. The buyer sued the manufacturer and the assignee for interference with the buyer's Purchase and Sale Agreement ("PSA") with the dealer. *Id.* These defendants demanded arbitration based upon the arbitration provision within the PSA—to which they were not parties. *Id.* at 304–05. The Texas Supreme Court held arbitration to be proper between the signatory (buyer) and the non-signatories (manufacturer and assignee) because the buyer was "asserting rights that it would not have but for the PSA, but refusing to honor its agreement to arbitrate disputes over those rights." *Id.* at 305, 308. The Court found that the claims were the same against the manufacturer and the assignee such that the plaintiff should be equitably estopped from refusing to arbitrate its claims against the non-signatory manufacturer. *Id.* at 307.

A Florida court of appeals found similarly in *Tenet Healthcare Corp., FMC v. Maharaj*, 787 So.2d 241, 243 (Fla. 4th DCA 2001). While Tenant Healthcare and the hospital were not signatories to the underlying arbitration agreements, the *Tenet* court held that they were "parties" within the meaning of the arbitration clauses "because the claims against them arose solely in connection with their activities as officers and directors of the Transplant Institute, [and] also because the claims against them arose from the same set of operative facts as those claims against the Transplant Institute and the General Partner." *Id.* The Tenet Healthcare court explained:

> Because the arbitration clauses in this case are ***expansive provisions***, encompassing '***any controversy or claim arising out of or in connection with this Agreement***, or the alleged breach thereof,' and because the factual allegations in the complaint relied on the contract between the parties, we resolve the issue in favor of arbitration.

*Id.* (emphasis added.)

While Asura is not specifically listed on PRRS's signs, it can still compel arbitration of Plaintiffs' claims. *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d at 209 (arbitration should not be precluded merely because it is "impractical to require every corporate agent to sign or be listed in every contract"). By parking on the Facilities, Plaintiffs agreed to arbitrate any unresolved disputes relating to their use of those Facilities. (Drow Decl. Exs. 1-2.) The "dispute" underlying Plaintiffs' Complaint is singular – they take issue with the "parking notice scheme" from the facilities and allege that all Defendants are both liable without distinction. Permitting Plaintiffs to arbitrate with PRRS and to preclude Asura from doing so would prevent estoppel "when a plaintiff's claims against the non-signatory are inextricably intertwined with his claims against the contract signatory" *Tyman v. Ford Motor Co.*, 521 F. Supp. 3d 1222, 1227 (S.D. Fla. 2021) (citation omitted); *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (a non-signatory can compel arbitration "when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement the estopped party has

signed."). Accordingly, since Plaintiffs have alleged intertwined and virtually indistinguishable claims against both Defendants, Plaintiffs are estopped from arbitrating their claims against one Defendant and not the other.

### E. This Court Should Stay the Case Pending the Results of the Arbitration.

"A court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Smith v. Davison Design & Dev., Inc.,* No. 3:13-CV-1194-J-32JBT, 2013 WL 12155489, at *1 (M.D. Fla. Dec. 18, 2013). A court may stay discovery if there is good cause, such as "the elimination of unnecessary expenditures of time, money, and other resources." *Found. Church Inc v. Indep. Specialty Ins. Co*., No. 8:23-CV-2847-CEH-JSS, 2024 WL 555863, at *1 (M.D. Fla. Jan. 4, 2024); *Leblanc v. C.R. England, Inc*., No. 3:13-CV-282-B, 2013 WL 12354441, at *2 (N.D. Tex. May 20, 2013) (noting good cause to stay exists to avoid "undue burden or expense."). Good cause exists here, as there is an applicable arbitration agreement that covers the dispute. Additionally, "permitting discovery to proceed in a case that may be subject to arbitration could frustrate one of the purposes underlying arbitration, namely, the inexpensive and expedient resolution of disputes and the easing of court congestion." *Sundial Partners, Inc. v. Atl. St. Cap. Mgmt. LLC*, No. 8:15-CV-861-T-23JSS, 2016 WL 4769748,

at *1 (M.D. Fla. Mar. 2, 2016) (citation omitted); *Herod v. DMS Sols., Inc.*, No. 4:23-CV-04465, 2024 WL 4535467, at *1 (S.D. Tex. Oct. 21, 2024) (finding a defendant "would face prejudice and undue expense if the Court allows Plaintiff to use the discovery mechanisms designated for civil litigants in a case that may ultimately be referred to an arbitrator"). Staying the case will allow the parties to avoid duplicative discovery, and conserve both parties', and this Court's, time and resources.

A stay of discovery pending resolution of a motion to compel arbitration is appropriate. *See, e.g.*, *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 300 (5th Cir. 2014); *Harrell's LLC v. Agrium Advanced (U.S.) Techs., Inc.*, No. 8:10-cv-1499-T-33AEP, 2011 WL 1596007, at *2 (M.D. Fla. Apr. 27, 2011) (finding a stay appropriate in the absence of "exceptional circumstances [] that require the denial of a motion to stay"). Such a stay may be warranted because "participation in litigation, including discovery, can militate in favor of a finding that a party has waived their right to arbitrate." *Harrell's*, No. 8:10-cv-1499-T-33AEP, 2011 WL 1596007, at *2. Additionally, permitting discovery to proceed in a case that may be subject to arbitration could "frustrate one of the purposes underlying arbitration, namely, the inexpensive and expedient resolution of disputes and the easing of court congestion." *Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy*, No. 815CV01690CEHJSS, 2016 WL 4769747, at *1 (M.D. Fla. Feb. 3, 2016.)

The U.S. Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, further explained that requiring parties to proceed with discovery and litigation while the issue of arbitration is still being resolved, particularly in a class action, undermines the right to arbitration, is "not especially sensible," and "creates the possibility that the district court will waste scarce judicial resources … on a dispute that will ultimately head to arbitration." 599. U.S. 736, 743 (2023) (addressing stays pending an interlocutory appeal under the FAA and holding they are required).

Because Plaintiffs' claims are subject to arbitration, Defendants request that the Court stay this action pending completion of arbitration. The Eleventh and Fifth Circuit have held that the proper course is to stay the proceedings pending the completion of arbitration rather than dismiss the action. *Kubala v. Supreme Prod. Servs., Inc.* 830 F.3d 199, 201 (5th Cir. 2016) (holding that district courts should stay claims, rather than dismiss, when compelling arbitration); *Giraud v. Woof Gang Bakery*, No. 8:17-CV-2442-T-26AEP, 2018 WL 2057814, at *2 (M.D. Fla. May 3, 2018). And pursuant to the FAA, an application to stay the proceedings pending the results of the arbitration is mandatory. 9 U.S.C. § 3 (stating that courts "shall" stay the action pending arbitration); *VVG Real Est. Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1203 (S.D. Fla. 2018) (restating same). Recently, the Supreme Court rectified a circuit split over whether stay or dismissal

pending arbitration is appropriate by ruling that courts should stay cases pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173 (2024).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court compel arbitration of Plaintiffs' claim, as well as stay this case pending the arbitration. In addition, Defendants request that the Court stay the case pending resolution of the motion to compel.

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), counsel for Defendants conferred with Counsel for Plaintiffs via telephone, and Plaintiffs oppose the relief sought herein.

DATED this 5th day of February, 2026.

Respectfully submitted,

*/s/ Angelique K. Howard*

**Kevin E. Hyde**
Florida Bar No. 091110
khyde@foley.com
**Angelique K. Howard**
Florida Bar No. 1050723
akhoward@foley.com
robyn.riddell@foley.com
Foley & Lardner LLP
1 Independent Dr.
Suite 1300 Jacksonville, FL 32202
Telephone: 904.359.8703
Facsimile: 904.359.8700

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2026, the foregoing was electronically filed through the Florida Courts e-filing portal, which will provide electronic notice to counsel for Plaintiffs, Charles Garabedian, charles@mfh.law, and Victor Sanabria, victor@mfh.law of Mark, Ferrer, and Hayden.

*s/ Angelique K. Howard*
Angelique K. Howard