UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RYAN DELL and JIRANDY LAHITTE,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v. CASE NO. 1:26-cv-21266-KMW

PARKING REVENUE RECOVERY SERVICES, INC.,
and ASURA TECHNOLOGIES USA, INC.

Defendants.
_______________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendants[1], PRRS and Asura, by and through their undersigned counsel, hereby submit this Reply in Support of their Motion to Compel Arbitration and Stay Proceedings (Dkt. 10). In support, Defendants state as follows:

**INTRODUCTION**

Plaintiffs' Opposition (the "Response," Dkt. 24) asks the Court to disregard the prominently posted Contract that governed Plaintiffs' decision to park at the San Antonio Lot and the Miami Garage, notwithstanding undisputed evidence that multiple red conspicuous signs–including entrance and exit placements–distinctly disclosed, under a bold "**ARBITRATION**" heading, state that "[b]y parking on this Facility" users agree that the "sole remedy for all unresolved disputes is binding arbitration" and waive jury and class procedures.

Plaintiffs' Response attempts to convert that objective notice-and-assent inquiry into a subjective narrative centered on what they say they personally noticed or read at the time of entry. Their after-the-fact assertions do not create a basis to disregard conspicuous posted terms or to avoid arbitration where the Contract ties acceptance to the voluntary act of parking. Plaintiffs' remaining challenges likewise fail. Courts have compelled arbitration on materially identical

[1] Unless otherwise indicated, all capitalized terms used herein have the meanings ascribed to them in Defendants' Motion and Plaintiffs' Response.

posted-sign contracts, and the facility-use exchange supplies ample consideration and defeats any "lack of mutuality" label. The arbitration clause is also definite and enforceable even if it does not list every procedural detail on the face of the sign, and Plaintiffs cannot satisfy Florida's requirement to prove both procedural and substantive unconscionability.

Finally, Asura may compel arbitration under settled nonsignatory principles given the way Plaintiffs plead their claims and the intertwined conduct alleged. Accordingly, and for the reasons set forth below, the Court should grant the Motion, compel Plaintiffs to proceed in individual arbitration, and stay this action pending completion of arbitration.

## ARGUMENT

### I. Plaintiffs Entered into an Enforceable Arbitration Agreement.

Defendants' evidence plainly establishes that each facility displayed multiple conspicuous signs containing the arbitration term under a standalone bold white "**ARBITRATION**" heading on a contrasting red background. *See* (Drow Decl. Exs. 1–2.) The San Antonio Lot and the Miami Garage contain several signs posted by Defendants, including at the entrances and exits, and those signs state: "[b]y parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to jury trial, class action and/or class arbitration." Yet, Plaintiffs attempt to argue that drivers lacked a chance to see or review the arbitration terms before the conduct that formed assent by focusing on *one single* signage placement located in the Miami Garage, arguing that it was located on the "passenger-side." Conveniently, Plaintiffs appear to simply ignore the evidence that shows the signs were posted prior to Plaintiffs' use, including a sign at the gate before customers could pay for parking, a sign behind the payment kiosk, and additional signs inside and outside the garage. (Dkt. 10-1.) All signs prominently disclosed that parking constituted agreement to arbitrate. Plaintiffs' own pleading admits they parked at the respective facilities before receiving PRRS notices, and the posted Contracts were in place before Plaintiffs parked. (Dkt. 5 ¶¶ 60, 82; Dkt. 10-1.)

Plaintiffs try to recast the threshold formation by arguing Defendants' position requires motorists to "read dense legal text while driving." That is not the standard, and that is not Defendants' position. The question is whether Plaintiffs had reasonable, objective notice of the terms and an opportunity to accept or decline—not whether they subjectively recall reading each provision at the moment of entry.

To that point, Plaintiffs' declarations repeatedly fall back on the same theme–that they did not see, read, or appreciate the arbitration term on the posted signage when they parked. That after-the-fact assertion does not defeat formation on this record. Any failure to read those clear and conspicuous notices is not a defect in Defendants' notice; it was simply Plaintiffs' own individual choice. Florida law does not permit a party to avoid agreed terms by claiming they did not read them, and a party cannot defend against enforcement on the ground that the contract was entered into without reading it. *Wexler v. Rich*, 80 So. 3d 1097, 1100–01 (Fla. 4th DCA 2012); *All Fla. Sur. Co. v. Coker*, 88 So. 2d 508, 510 (Fla. 1956).

Moreover, whether Plaintiffs, in actuality, did in fact read or not read the signs is not the test as to whether they received notice. The formation inquiry turns on whether the terms were reasonably conspicuous such that a reasonable person would be charged with notice—not on whether a particular plaintiff now claims they personally noticed or read the sign at the time. *See Hunsinger v. Parking Revenue Recovery Services, Inc.*, No. 3:25-CV-1606-G-BT, 2026 WL 368558, at *4 (N.D. Tex. Feb. 6, 2026).

*Hunsinger* involved the <u>same</u> exact PRRS parking-sign contract at an adjacent parking lot in San Antonio, Texas. *Id.* There, the plaintiff contended he "did not see" the sign containing the arbitration provision. *Id.* The court rejected that argument, concluding that the posted red sign and its arbitration provision were "reasonably conspicuous," and that the plaintiff was therefore charged with notice of the terms. *Id.*

In reaching that conclusion, the court noted the <u>same</u> conspicuous features present here: the sign was posted near the entrance and was not obstructed or hidden from view, it used white lettering that stood out against a red background, the full agreement fit on the sign, and the arbitration provision appeared under "ARBITRATION" in all capital letters. *Id.* The court further explained that a reasonable person would have noticed the sign and understood that something important was being communicated. *Id.*

The same reasoning applies here. As shown in the Motion, the facilities used prominent, unobstructed signage with the same visual cues, i.e. contrasting red background, white lettering, and a clearly labeled "ARBITRATION" heading. (Drow Decl. Exs. 1–2.) There is no doubt that Plaintiffs had notice of the arbitration provision, and it has no bearing that Plaintiffs submit declarations that state they in actuality chose not to read the clear, red, and bolded signs prior to parking. Indeed, Plaintiffs do not deny that the signs were there—they merely state that they did

not see them. It is well within this Court's authority to find that a large sign on a large pole that was clearly visible upon the entrance and exit of a parking facility was conspicuous and Plaintiffs are therefore required to arbitrate their claims.

Further, courts have specifically held that a plaintiff's declaration that they did not see or review the arbitration agreement in question—precisely the allegation here—is insufficient to call the making of the arbitration agreement into question. *Jones v. Sallie Mae, Inc.*, No. 3:13-CV-837-J-99MMH, 2013 WL 6283483, at *5 (M.D. Fla. Dec. 4, 2013) (holding that plaintiff's allegation that he did not recall receiving, reviewing, or agreeing to the arbitration provision were insufficient to create a jury issue); *Sultanem v. Bright House Networks, L.L.C.*, No. 8:12-CV-1739-T-24, 2012 WL 4711963, at *2 (M.D. Fla. Oct. 3, 2012) (plaintiff's denial in his declaration that he received the agreement is insufficient to defeat arbitration). Accordingly, because Plaintiffs had reasonable, objective notice of the arbitration provision and chose to park anyway, the Court should enforce the posted Contract and compel arbitration.

## II. *Tobey*, *Butler*, and *Hunsinger* Courts Compelled Arbitration Under Identical Circumstances.

In *Butler et al v. Asura et al.*, Case No. 24-cv-529 (D. Colo.), *Tobey v. Ace Parking Management, Inc. et al*, Case No. 3:24-cv-2932, 2025 WL 1919887 (N.D. Tex. July 11, 2025), and *Hunsinger*, 2026 WL 368558, at *3, the district courts compelled arbitration and stayed proceedings in the situation as here. The *Butler* court specifically stated:

> At first blush, it may seem counterintuitive or surprising that one can be bound by the terms of a contract by parking in a parking lot. But a bit of consideration reveals that such contracts are, in fact, not unusual at all. The fundamental exchange of promises at the heart of any implied parking contract is fairly obvious: you allow me to park my car on your property, and I agree to pay you for this privilege, or else risk towing and ticketing. This exchange, on its own, is sufficient to meet the basic criteria necessary to establish the formation of a contract.

(Dkt. 33, p. 2.)

Instead of addressing the clear and unavoidable rulings, Plaintiffs attempt to distinguish the cases by stating the facts are "different." In *Butler*, the defendants involved were the exact same defendants here, and the contracts are fundamentally the same, including the arbitration provision. It is not clear what, specifically, Plaintiffs contend distinguishes *Tobey* or *Butler* in any way that matters to the legal analysis. And Plaintiffs fail entirely to attempt to distinguish *Hunsinger*.

Plaintiffs' vague assertion that the facts are "different" in *Butler* and *Tobey* does not grapple with either decision's core holding—namely, that a posted parking contract may be formed by the decision to park and that the exchange of permission to use private property in return for compliance and payment is sufficient, standing alone, to establish formation. *Butler*, Case No. 24-cv-529 (D. Colo.); *Tobey*, 2025 WL 1919887. Plaintiffs appear to incorrectly argue again that in the Miami Garage, there was not sufficient signage. Again, not only does the factual record attached to the Motion defeat such claim, but such argument does nothing to address the legal holdings in *Butler*, *Tobey*, and *Hunsinger*, that is, the exchange of parking for payment is sufficient, standing alone, to establish the formation of a contract.

## III. The Contract is Supported by Consideration and Plaintiffs' "Lack of Mutuality" Attack Fails.

Plaintiffs' attempt to recharacterize the posted Contract as lacking consideration or mutuality fails. The exchange here is straightforward and undisputed: Plaintiffs parked at Defendants' facilities, and the posted terms governed that use. Under Florida law, a contract is supported by consideration where a party agrees to do something it is not already obligated to do, and "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Tranchant v. Ritz Carlton Hotel Co., LLC*, 2011 WL 1230734, at *4 (M.D. Fla. Mar. 31, 2011) (quoting *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005)).

That standard is easily met here. The posted terms confer a concrete benefit to the parker–the right to use private parking subject to the stated rules–and impose concrete obligations, including payment and compliance with posted limitations. (Drow Decl. Exs. 1–2.) The arbitration term is part of that same posted bargain and is presented as a condition of use, stating that "[b]y parking on this Facility" the user agrees that the "sole remedy for all unresolved disputes is binding arbitration." (*Id.*) Where, as here, there is consideration supporting the facility-use contract as a whole, that is defendants granting permission to park in exchange for compliance and payment, that consideration supports the arbitration provision as well. *Tranchant*, 2011 WL 1230734, at *4.

Plaintiffs' mutuality argument fares no better. Indeed, this same argument has already been rejected. In *Tobey*, the plaintiff argued the arbitration agreement lacked mutuality because, like Plaintiffs suggest here, he interprets the sign as requiring arbitration only for claims brought by the parker, not the parking-enforcement company. *Tobey*, 2025 WL 1919887, at *2–3. The court

rejected that construction as inconsistent with the text and context of the posted terms, explaining that arbitration is the "sole remedy" for "all unresolved disputes," not merely disputes brought by one side, and that the plaintiff's reading would impermissibly nullify the word "all" from the clause. *Id.*

Here, just like in *Tobey*, Plaintiffs' focus on second-person phrasing ("you hereby agree") does not transform a facility-use arbitration term into a non-contract. The operative language still ties acceptance to the voluntary act of parking and defines arbitration as the exclusive forum for "all unresolved disputes" arising from that use. (Drow Decl. Exs. 1–2.) Plaintiffs' admitted decision to park supplies the factual predicate for the facility-use exchange, and Florida law does not permit Plaintiffs to sever the arbitration term from the broader contract they accepted by conduct.

Florida courts have rejected the notion that an arbitration clause is void merely because one party has the sole discretion to invoke arbitration or because the clause is attacked as "one-sided," where the overall contract is supported by sufficient consideration. *Avid Eng'g, Inc. v. Orlando Marketplace Ltd.*, 809 So. 2d 1, 2–4 (Fla. 5th DCA 2001) (reversing denial of motion to compel and holding arbitration clause "at the sole discretion" of one party was not void for lack of mutuality of obligation). Consistent with that rule, *Tranchant* likewise recognized that mutual promises to arbitrate are not the only possible consideration and reiterated that *Avid* supports enforcement of an arbitration provision where the contract has consideration. 2011 WL 1230734, at *4.

## IV. The Arbitration Clause is Definite and Clear.

Plaintiffs argue the arbitration provision is too "indefinite" to enforce because it does not spell out every procedural detail on the face of the signage. That contention is inconsistent with FAA and Florida policies favoring arbitration, under which courts "indulge every reasonable presumption in favor of arbitration," and resolve ambiguities in favor of enforcing an agreement to arbitrate. *Osprey Health Care Ctr., LLC v. Pascazi*, 329 So. 3d 177, 181–82 (Fla. 2d DCA 2021). Even setting aside those presumptions, the arbitration clause here is neither unclear nor indefinite. The posted terms state, in brief and unequivocal language, that arbitration is the "sole remedy" for "all unresolved disputes." (Drow Decl. Exs. 1–2.) Plaintiffs' argument essentially asks the Court to invalidate an arbitration agreement because it uses general, inclusive language instead of cataloging every possible claim or procedural rule. This approach has already been rejected.

In *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000), the clause required arbitration of "any dispute between them or claim by either against the other," and the Court held that such language is "brief, unequivocal and all-encompassing," that the parties thereby agreed to arbitrate "any and all claims … with no exceptions," and that "[a]n arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other." *Id.* at 1221. The Eleventh Circuit rejected the plaintiff's argument that the arbitration clause was vague and overbroad, and compelled arbitration. Applying this same reasoning, in *Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352 (M.D. Fla. 2004), the court explained that an arbitration agreement "need not specifically set out each and every claim" covered by the agreement, and relied on *Brown* to reject a "vagueness" challenge to broad arbitration language. *Id.* at 1354.

Nor does Plaintiffs' "missing procedures" theory supply a basis to deny arbitration, because Florida law provides a gap-filling framework even where an agreement does not enumerate every procedural mechanism. In *Osprey Health Care Ctr., LLC v. Pascazi by & through Outwater*, 329 So. 3d 177 (Fla. 2d DCA 2021), the court addressed–and rejected–a "missing terms" argument that claimed the arbitration agreement was invalid because the parties lacked "any idea as to how an arbitration was to proceed." *Id.* at 184–86. The court held that the agreement there provided sufficient guidance, and, critically, that "even if there were a gap or lack of clarity concerning arbitration procedures, the [Florida Arbitration Code] would supply those terms." *Id.* at 186. The court further recognized that, to the extent any procedural questions remained, the Florida Arbitration Code addresses core mechanics such as arbitrator appointment and conduct of the hearing, as well as the award and related procedures. *Id.*

Applying those principles here, Plaintiffs' indefiniteness argument fails as the posted arbitration clause is clear and comprehensive as to the parties' agreement to arbitrate "all unresolved disputes," and any arguable procedural gaps are supplied by the Florida Arbitration Code's default procedures.

## V. Plaintiffs Cannot Meet their Burden of Showing Unconscionability.

Plaintiffs' unconscionability argument merely repackages their formation points and does not satisfy the required showing. Plaintiffs fail to substantiate their claims that the arbitration provision was procedurally and substantively unconscionable. *Kendall Imps., LLC v. Diaz,* 215 So. 3d 95, 109 (Fla. 3d DCA 2017) ("We highlight that the party seeking to avoid arbitration has the

burden to prove both procedural and substantive unconscionability."); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. 1st DCA 2003).

To determine whether a contract is procedurally unconscionable, "a court must look to the manner in which the contract was entered into," including the appearance of the arbitration clause itself. *Bentley v. EFN W. Palm Motor Sales, LLC*, 214 F. Supp. 3d 1299, 1303 (S.D. Fla. 2016). Plaintiffs cannot establish procedural unconscionability where the Contract terms were conspicuously posted and acceptance was tied to a voluntary decision to use private parking subject to stated conditions. The arbitration provision was conspicuously titled, in bold, "**ARBITRATION,**" was neither minimized nor hidden, and was in a white font with a red background. (Drow Decl. Exhs. 1–2); *see Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1341 (S.D. Fla. 2022) (finding an arbitration provision enforceable where it was "not minimized or hidden so as to make it procedurally unconscionable"). The arbitration provision contains language that deliberately demands the parties' attention in capital font. The arbitration clause was not "hidden in a labyrinth of small print," and Plaintiffs cannot avoid their "contractual responsibility simply because [they] chose not to review the terms of [their] agreement." *Bentley*, 214 F. Supp. 3d at 1303 (citations omitted). Plaintiffs cannot establish procedural unconscionability where the Contract terms were conspicuously posted and acceptance was tied to a voluntary decision to use private parking.

Although the fact Plaintiffs are unable to establish procedural unconscionability ends the analysis, Plaintiffs also fail to allege substantive unconscionability. *See Kendall Imps., LLC*, 215 So. 3d 95 at 109 (holding a party seeking to avoid arbitration bears the burden to prove **both** procedural and substantive unconscionability). "Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair.'" *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1139 (11th Cir. 2010). The test for substantive unconscionability is to determine if the terms of a contract are so "outrageously unfair as to shock the judicial conscience." *Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 285 (citations omitted). Plaintiffs provide no evidence to meet such high standard, merely alleging the Contract is "one-sided," which, as stated above, is not a valid reason to defeat an arbitration clause, while in the same breath ignoring the fact Plaintiffs had the choice to park at the respective garages. Nor is this an adhesion, "take-it-or-leave-it" contract in any meaningful sense. *Id.* (defining an adhesion contract as a standardized form offered on a "take-it-or-leave-it" basis, reflecting an absence of

"meaningful choice".) Procedural unconscionability turns on the absence of meaningful choice, and Plaintiffs had that choice here: they could decline the posted terms by parking elsewhere, take a ride-share, public transportation, or instead elect to park and accept the conditions of use. They chose the latter, and that choice is dispositive.

## VI. Defendant Asura Properly Seeks to Compel Arbitration.

Plaintiffs contend Asura cannot compel arbitration because it is a nonsignatory and because Plaintiffs' DPPA claim purportedly does not "depend on" the posted Contract. That framing ignores both the way Plaintiffs plead their case and the nature of the dispute. Plaintiffs repeatedly allege the same conduct by "Defendants" collectively, without distinction, and seek to impose joint liability on PRRS and Asura for the same alleged "parking notice scheme" arising from Plaintiffs' use of the Facilities. *See generally* (Dkts. 1, 5.) The posted Contract terms governing that facility-use relationship expressly include arbitration for "all unresolved disputes" arising from parking on the Facility. (Drow Decl. Exs. 1–2.)

Under well-established nonsignatory principles, a plaintiff cannot pursue claims premised on and intertwined with a contract-governed relationship and, at the same time, avoid the arbitration clause that is part of the conditions of that relationship. As a non-party to the Contract, Asura can compel arbitration when either (i) "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," or (ii) "when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Fla. Woman Care LLC v. Nguyen*, 329 So. 3d 146, 150 (Fla. 4th DCA 2021) (citing *Westmoreland v. Sadoux*, 299 F.3d 462 (5th Cir. 2002)); *Tobey*, 2025 WL 1919887, at *5. The second scenario applies here. Plaintiffs' own allegations against Asura are not separate or independent—they are virtually indistinguishable from the allegations against PRRS and arise from the same operative facts tied to Plaintiffs' use of the facilities under the posted Contract terms. *See generally* (Dkt. 1, 5.) Plaintiffs cannot avoid arbitration by pleading Asura as an additional defendant while continuing to base the dispute on the same facility-use transaction and the same alleged conduct.

*Tobey* is directly on point and confirms that Plaintiffs cannot avoid arbitration by suing an additional defendant while pleading the case as a single, undifferentiated "scheme." 2025 WL 1919887, at *5. In *Tobey*, the court compelled arbitration not only for PRRS (the signatory to the

parking-sign agreement), but also for a nonsignatory co-defendant under "intertwined estoppel," explaining that it applies where a nonsignatory has a close relationship with a signatory and the claims are "intimately founded in and intertwined with the underlying contract obligations." *Id.* The court emphasized that a close relationship is supported where the plaintiff treats multiple defendants "as a single unit" in the pleadings and raises "virtually indistinguishable factual allegations" against them, and it relied on the plaintiff's repeated collective references to the parties together to conclude the nonsignatory could enforce the arbitration agreement. *Id.*

The same type of pleading is present here. Plaintiffs assert the same operative theory and seek joint liability against "Defendants" collectively for the same alleged "parking notice scheme," without separating actionable conduct by PRRS versus Asura. Indeed, Plaintiffs assert a single claim against PRRS and Asura collectively, without distinguishing any conduct between them. That is precisely the circumstance where a plaintiff is estopped from arbitrating with one defendant while litigating the same fact-bound dispute against the other. Because Plaintiffs' claims against Asura are asserted as part of the same dispute arising from the same alleged conduct, Asura may invoke the arbitration agreement and Plaintiffs should be compelled to arbitrate their claims, if at all, against both Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. 10), compel Plaintiffs to proceed in individual arbitration, if at all, and stay this action pending completion of arbitration.

DATED this 12th day of March, 2026.

Respectfully submitted,

*/s/ Angelique K. Howard*
Angelique K. Howard
Florida Bar No. 1050723
akhoward@foley.com
robyn.riddell@foley.com
Foley & Lardner LLP
1 Independent Dr.
Suite 1300 Jacksonville, FL 32202

Telephone: 904.359.8703
Facsimile: 904.359.8700

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2026, the foregoing was electronically filed through the e-filing portal, which will provide electronic notice to counsel for Plaintiffs, Charles Garabedian, charles@mfh.law, and Victor Sanabria, victor@mfh.law of Mark, Ferrer, and Hayden.

*s/ Angelique K. Howard*
Angelique K. Howard